IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAH N.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:24-cv-00156-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Leah N. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in 1983, plaintiff alleges disability beginning November 1, 2008,[3] due to post-traumatic stress disorder ("PTSD"), anxiety, depression, attention-deficit/hyperactivity disorder, and diabetes. Tr. 349-51, 404. Her application was denied initially and upon reconsideration. On May 9, 2022, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 2610-37. On June 15, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 117-32.

Plaintiff timely filed an appeal and, on May 22, 2023, this Court reversed the ALJ's decision and remanded the case for further proceedings based on the parties' stipulation. Tr. 145.

On November 2, 2023, a second ALJ hearing was held, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 26-45. On November 21, 2023, the ALJ issued another unfavorable decision. Tr. 4-19.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had "not engaged in substantial gainful activity since January 13, 2020, the application date." Tr. 7. At step two, the ALJ determined the following impairments were medically determinable and severe: "asthma, obesity, depression, [and PTSD]." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 10.

---

[2] The record before the Court constitutes more than 2600 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court generally cites to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff previously applied for and was denied disability benefits based on the same alleged onset date, with the last most recent denial occurring on April 13, 2018, following an Administrative Law Judge hearing. Tr. 5, 49-60, 93.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations":

> [S]he can never climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to extreme cold, extreme heat, and atmospheric conditions such as fumes, odors, dust, gases, and poor ventilation. She can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. She can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less. She can tolerate occasional changes in a routine work setting. She can tolerate occasional interaction with coworkers. She can tolerate no interaction with the general public as an element of the job.

Tr. 11-12.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 17. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as machine packager, cleaner, automobile detailer, routing clerk, collator operator, and small products assembler. Tr. 18.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements surrounding certain mental health limitations – specifically, her inability "to go into public restrooms" or "be near Hispanic males"; and (2) "fail[ing] to incorporate a restriction to 'repetitive' tasks as part of the RFC" despite purporting to credit the state agency consulting source opinions. Pl.'s Opening Br. 4, 11-12 (doc. 15).

**I.     Plaintiff's Testimony**

Plaintiff contends the ALJ erred by rejecting her testimony concerning the extent of her PTSD symptoms. When a claimant has medically documented impairments that could reasonably

Page 3 – OPINION AND ORDER

be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." Smartt, 53 F.4th at 499.

At the November 2023 hearing, plaintiff testified she was unable to work due to anxiety, hypervigilance, and an inability to leave the house alone (except to go to certain familiar places). Tr. 36. When going out in public, plaintiff indicated she wears loose clothing and shoes "that are easy to slide off if [she needs] to be able to get away from someone." Tr. 37. And she will leave a

Page 4 – OPINION AND ORDER

public place if it is "too crowded or loud or there will be a lot of Hispanic males." Tr. 38. She stated she "looks around everywhere" to "see if there is any Hispanic males around, if there's any people that make me feel uncomfortable, to find a route through if there's a small crowd of people around," and to identify exits in case she needs to leave quickly. *Id.*

Plaintiff also testified that she is unable to use public bathrooms because she "was assaulted [at age] 22 in a public bathroom." *Id*. Accordingly, plaintiff either "hold[s] it until [she] gets home" or uses "piddle pads [if she is] going to be gone for a little longer . . . in case [she] is not able to make it all the way home." Tr. 39.

When asked about a reference in the record to a Taylor Swift concert in Seattle, plaintiff testified:

> [M]y daughter is 14 and a huge Swiftie. Her life's dream has been to see Taylor in concert. We worked together to try to save up money for tickets throughout the summer to see her in Seattle because my aunt lives just outside of Seattle in Kent and we haven't seen them in a while . . . This caused me a lot of anxious feelings and almost panic attacks just at the thought of it but my daughter also has anxiety around large crowds of people and we talked about how . . . we can always leave if it's too much. Chances are we most likely won't get tickets because ticket prices are very high in resale. And so, we went up and we stayed up until 1:00 in the morning, trying to get the tickets that were released. We never got the tickets. We tried -- we talked about going and doing what we dubbed Taylor gating where fans were just hanging outside of the stadiums and listening to the concert that way. But we knew that that would be too much, also, because outside of Taylor, there was like six other events going on in Seattle. So, there was going to be a lot of people and [we] finally admitted to ourselves that it would just be too much to even attempt that. And we just settled with hanging out with my aunt and my cousin and we went to a movie instead and just hung out at their house.

Tr. 43-44.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements about the "intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

Page 5 – OPINION AND ORDER

explained in this decision." Tr. 13. Specifically, the ALJ relied on plaintiff's activities of daily living and the objective medical record. Tr. 14-17.

Concerning the ALJ's first rationale, "[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Substantial evidence supports the ALJ's decision in this regard.

Notably, plaintiff went to public places where she had little to no control over the people she may encounter on a semi-frequent basis, sometimes as "homework" from her therapist, with the goal of pushing her boundaries and helping her heal from her trauma, and sometimes as a part of her day-to-day life.[4] Such locations included restaurants, stores, medical offices, group therapy, and the pool at her apartment building and a local community center. *See, e.g.* Tr. 453, 1190, 1239, 1241, 1411-17, 1724-25, 1730, 1755, 1767, 2232, 2465-66, 2620, 2622, 2628. Plaintiff also obtained her driver's license and rode public transportation during the adjudication period. Tr. 1423, 1698, 1739, 1772. Additionally, she took a beach vacation with her family, travelled to Seattle and encountered "unfamiliar situations" in an effort to see Taylor Swift, went to a holiday event at the zoo, tried dating, and attended her sister's graduation and a convention for essential oils. Tr. 541, 543, 549, 1237, 1472, 1696, 1750, 2619. While the record reflects that some of these activities increased plaintiff's anxiety, she was nonetheless typically able to persist using de-escalation techniques.

---

[4] The VE testified that, while "total isolation [is] not a feature of competitive work," there are many jobs that have "aspects of that." Tr. 32.

Page 6 – OPINION AND ORDER

Thus, the ALJ reasonably inferred from the aforementioned activities that plaintiff's mental functional abilities were greater than alleged. *See Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)).

Turning to the ALJ's remaining rationale, "whether the alleged symptoms are consistent with the medical evidence" is also a relevant consideration. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the extensive medical record before the Court contains a single reference to public restroom use – namely, a July 2020 chart note indicating that plaintiff "struggles to use public bathrooms . . . and would like to work on improving her functioning therein" – despite the fact that plaintiff obtained regular and continuous mental health treatment. Tr. 1713.

Finally, to the extent plaintiff alleges reversible error due to the ALJ's failure to specifically address her testimony about public restrooms and Hispanic men, "a line-by-line exegesis of the claimant's testimony" is not required. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (ALJ need "not recite . . . magic words" and the reviewing court may draw reasonable inferences from the ALJ's decision); *Molina*, 674 F.3d at 1121 ("when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned") (citation and internal quotations omitted).

In sum, because the ALJ cited at least one legally sufficient reason, supported by substantial evidence, his decision is affirmed as to plaintiff's subjective symptom testimony relating to PTSD. *See Batson*, 359 F.3d at 1197 (ALJ's evaluation of the claimant's subjective symptom testimony may be upheld even if all the reasons proffered are not valid).

II.  **Medical Opinion Evidence**

Plaintiff also asserts the ALJ improperly excluded an RFC restriction for "repetitive" work as set forth in the state agency consulting source opinions. Where, as here, the claimant's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul,* 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In June 2020 and September 2021, state agency consulting sources Diane Kogut, Ph.D., and Kay Cogbill, M.D., respectively, reviewed the record and opined that plaintiff was moderately limited in her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. Tr. 81-85, 103-09. All other categories were ranked "not significantly limited." *Id.* In the accompanying narrative report, Drs. Kogut and Cogbill found *Chavez v. Bowen,* 844 F.2d 691 (9th Cir. 1988), applied, such that they adopted the findings of the prior ALJ decision from 2018 limiting plaintiff to "unskilled" work – i.e., plaintiff

could "perform [simple, routine, repetitive tasks] in situations with occasional contact with coworkers and no contact with the public." Tr. 81, 103-04.

The ALJ found the opinions of Drs. Kogut and Cogbill "somewhat persuasive." Tr. 16. In particular, the ALJ stated:

> While not supported by a review of the complete record, the opinions are well supported by explanation and the "paragraph B" limitations and a limitation to repetitive work, with occasional interaction with coworkers and no contact with the general public is generally consistent with the record, including [plaintiff's] anxious behavior on exam, occasionally slow responses or slow speech, and occasionally hesitant speech, balanced against her generally normal alertness and orientation, memory, thought process, attention and concentration, mood, affect, cooperation, grooming, speech, motor behavior, insight, and judgment. It has been incorporated into the above limitation to occasional changes in a routine work setting, with occasional interaction with coworkers and no interaction with the general public as an element of the job. However, the opined limitation to only simple, routine tasks is not persuasive, and no further limitation in task repetitiveness is persuasive, as it underestimates [plaintiff'] capacity in a manner inconsistent with the record, notably her normal memory, thought process, attention and concentration, which better support a capacity for simple and detailed tasks that can be learned in 30 days or less.

*Id.* (internal citations omitted).

In other words, the ALJ found that, although the state agency psychological consultants' findings were "not supported by a review of the complete record," they were "generally consistent with the record" in regard to plaintiff's adaptive and social limitations but not concentration, persistence, or pace. *Id.* And, while the ALJ's discussion may lack ideal clarity, it is nonetheless beyond dispute that the ALJ expressly rejected a restriction for simple, routine, repetitive tasks because "it [was] inconsistent with the record." *Id.*

Here, plaintiff does not (and cannot) contest that inconsistency with the medical record is a valid reason to find a medical opinion unpersuasive. *See, e.g.*, *Hahn v. Berryhill*, 722 Fed.Appx. 602, 605 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Moreover,

Page 9 – OPINION AND ORDER

while the medical evidence reflects anxiety and PTSD symptoms, it does not overall indicate any significant impairment in memory, concentration, or focus.

Regardless, even assuming the ALJ erred in relation to the opinions of Drs. Kogut and Cogbill, such an error was harmless. All of the jobs identified by the VE involve a specific vocational preparation – otherwise known as the "SVP" – of 1 or 2, indicating unskilled work. Tr. 31; *Dennis v. Colvin*, 2015 WL 3867506, *6 (D. Or. June 20, 2015); *see also Terrey v. Berryhill*, 696 Fed.Appx. 831, 834 (9th Cir. 2017) (denoting that "concentration is not critical" for unskilled work) (citation and internal quotations omitted). Similarly, the general educational development – or "GED" – reasoning level for each of the representative occupations is 2, and courts within the Ninth Circuit have repeatedly held that a restriction to simple, routine, and/or repetitive tasks is consistent with GED level 2 reasoning. *See, e.g.*, *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. 2008); *Whitney v. Astrue*, 2012 WL 712985, *4 (D. Or. Mar. 1, 2012). Accordingly, the ALJ did not commit reversible error as to the state agency consulting source opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed, and this case is dismissed.

IT IS SO ORDERED.

DATED this 21st day of March, 2025.

　　　　　　　　　　　/s/ Jolie A. Russo
　　　　　　　　　　　Jolie A. Russo
　　　　　　　　United States Magistrate Judge